UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **TAMEKIA PAIGE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-190-RLB** |
| **STATE FARM FIRE AND CASUALTY COMPANY** | **CONSENT** |

## ORDER

Before the Court is Defendant's Motion for Summary Judgment filed into the record on October 2, 2020. (R. Doc. 35). The deadline for filing an opposition has expired. LR 7(f). Accordingly, the motion is unopposed.

### I.    Background

On or about November 16, 2018, Tamekia Paige ("Plaintiff") initiated this action in state court to obtain recovery from State Farm Fire and Casualty Company ("State Farm") for alleged losses incurred under her homeowner's policy as a result of an alleged burglary of her home at 2016 Ellerslie Drive in Baton Rouge on November 17, 2017. (R. Doc. 1-4). Plaintiff seeks contractual damages and statutory bad faith penalties. State Farm removed the action. (R. Doc. 1).

On September 30, 2020, the deadline to file dispositive motions, State Farm sought leave to file a Motion for Summary Judgment exceeding the Local Rule's page limits and to file certain exhibits conventionally. (R. Docs. 25, 31). The Court granted the motions. (R. Docs. 32, 33, 34). State Farm's Motion for Summary Judgment was filed into the record on October 2, 2020. (R. Doc. 35). Plaintiff has not filed an opposition as of the date of this Order.

JURY

Plaintiff also failed to comply with the Court's order requiring her to submit a joint proposed pretrial order by October 23, 2020. (R. Docs. 10, 11).[1] The Court granted State Farm leave to unilaterally file a proposed pretrial order and continued the pretrial conference until resolution of the instant motion. (R. Docs. 37, 38, 39).

State Farm seeks summary judgment as a matter of law for three reasons: (1) Plaintiff did not fulfil her duties of cooperation as a condition precedent to recovery prior to filing suit; (2) Plaintiff cannot prove that she fulfilled her obligations under the contract; and (3) Plaintiff cannot establish that a "named peril" caused the loss of her contents. (R. Doc. 35). As explained below, the Court will grant judgment as a matter of law because there is no disputed material fact with respect to whether Plaintiff breached the policy due to her failure to submit to examination under oath ("EUO") prior to filing suit, which prejudiced State Farm by precluding its ability to properly and thoroughly investigate the claim prior to the filing of suit and incurring the expenses of litigation.

## II.   Law and Analysis

### A.   Legal Standards for Summary Judgment

Summary judgment shall be granted when there are no genuine issues as to any material facts and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. When a motion for summary judgment is properly made and supported under Rule 56(c), the opposing party may not rest on the mere allegations of their pleadings, but rather must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1). The non-

---

[1] Plaintiff and counsel have been problematic throughout this litigation. On October 23, 3019, Loreal Marquis Jackson enrolled as counsel in place of Plaintiff's former counsel. (R. Doc. 16). The Court set a telephone conference for December 16, 2019. (R. Doc. 17). Plaintiff's counsel failed to participate in the telephone conference, and the Court issued a show cause order. (R. Doc. 18). Plaintiff's counsel submitted a written explanation of her failure to attend the conference. (R. Doc. 20).

movant's evidence is to be believed for purposes of the motion and all justifiable inferences are to be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, summary judgment must be entered against the plaintiff, if he or she fails to make an evidentiary showing sufficient to establish the existence of an element essential to his or her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Without a showing sufficient to establish the existence of an element essential to the plaintiff's claim, there can be "no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all facts immaterial." *Celotex Corp.*, 477 U.S. at 323.

A moving party must support an assertion that a fact cannot be genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Local Rule 56 details the requirements for statements of material facts. "A motion for summary judgment shall be supported by a separate, short, concise statement of material facts, each set forth in separately numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." LR 56(b)(1). "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly converted." LR 56(f).

### B.    Undisputed Material Facts

The Court has reviewed State Farm's Statement of Uncontested Material Facts (R. Doc. 35-2), and the accompanying citations to the record (R. Docs. 35-3, 35-4, 33-5, 33-6, 33-7, 33-8). Among other evidence in support of summary judgment, State Farm has submitted a declaration by Wibert Wilcox, a claim specialist with State Farm's special investigative unit assigned to the

claim. (R. Doc. 35-4 at 4-23, "Wilcox Decl."). As Plaintiff does not oppose the instant Motion for Summary Judgment, and has not otherwise submitted an opposing statement of material facts, the Court concludes that the facts contained in State Farm's Statement of Uncontested Facts are admitted for the purposes of determining whether summary judgment is appropriate. *See* Fed. R. Civ. P. 56(e); LR 56(g). The undisputed material facts are as follows.

On November 17, 2017, Plaintiff was the named insured under State Farm Fire and Casualty Company homeowners policy number 18-B1-A005-6 (the "Policy") and the insured location was 2016 Ellerslie Drive. (Wilcox Dec. ¶ 10; *see* R. Doc. 35-4 at 132-176). In relevant part, the Policy contains the following provisions with respect to an insured's duties after incurring a loss:

> **SECTION I. CONDITIONS**
>
> \*\*\*
>
> 2. **Your Duties After Loss**. After a loss to which this insurance may apply, you shall see that the following duties are performed:
>
> \*\*\*
>
> d. As often as we reasonable require:
> (1) exhibit the damaged property;
> (2) provide us with records and documents we request and permit us to make copies; [and]
> (3) submit to and subscribe, while not in the presence of any other **insured**:
>   (a) statements; and
>   (b) examinations under oath [. . . .]
>
> e. submit to us, within 60 days after the loss, your signed, sworn proof of loss [. . . .]
>
> \*\*\*
>
> 6. **Suit Against Us**. No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

(R. Doc. 35-4 at 153-154).

4

On November 25, 2017, Plaintiff contacted her State Farm agent and reported that her house (2016 Ellerslie) had been burglarized on November 17, 2017. (Wilcox Dec. ¶ 11). State Farm opened claim number 18-2162-N67 (the "November Claim") in response. (Wilcox Dec. ¶ 12). After several attempts, State Farm reached Plaintiff by telephone on December 1, 2017 and discussed the basic facts of the claimed loss. (Wilcox Dec. ¶¶ 13-14).

On December 18, 2017, Plaintiff reported to State Farm that on December 3, 2017, her house had been burglarized a second time. (Wilcox Dec. ¶ 21). Plaintiff filed a separate claim and State Farm opened claim number 18-2398-Q92 (the "December Claim") in response. (Wilcox Dec. ¶ 21).

On December 18, 2017, Plaintiff also submitted, by email, a four-page handwritten inventory of the items allegedly stolen from 2016 Ellerslie during the alleged November 17 and December 3 burglaries. (Wilcox Dec. ¶ 24). Plaintiff supplemented the list on December 28, 2017 with one additional handwritten page. The complete five-page "Contents List" provided information for 166 items. (Wilcox Dec. ¶ 24; see R. Doc. 35-7 at 1-5).[2] Plaintiff has never segregated what she alleges was stolen in the November 17 burglary from the December 3 burglary. (Wilcox Dec. ¶ 24). Furthermore, Plaintiff's December 28, 2017 submission did not include any receipts, invoices, or other documents to establish that (1) she owned the items on the list; (2) the age of the items; or (3) their replacement cost value. (Wilcox Dec. ¶ 25).

---

[2] The Contents List contains various duplicate items such as three laptops valued at $479.99 each, three weed-eaters valued at $198.99 each, three generators ranging in value from $499.99 to $689.000, five DVD players valued at $116.99 each, three 65 inch televisions valued at $1699.99 each, and three X Box Game Systems valued at $250.00 each. (R. Doc. 35-7 at 1-5). In addition, State Farm has provided evidence that Plaintiff sought recovery for some of the items claimed with respect to the November and December burglary in previous insurance claims. In support of her burglary claims, Plaintiff submitted a receipt for a set of car rims and tires she had submitted in support of her claims that the same rims and tires were destroyed in the 2016 flood in the Baton Rouge area. (Wilcox Dec. ¶¶ 7-9, 33). Plaintiff also submitted in support of her burglary claims a receipt for a herringbone chain and bracelet that she submitted for indemnity in a 2016 fire claim. (Wilcox Dec. ¶¶ 5, 6, 34). Plaintiff had reported that all of her personal property was destroyed in the 2016 fire and flood. (Wilcox Dec. ¶¶ 5, 7).

On January 10, 2018, State Farm took Plaintiff's recorded statement. (R. Doc. 35-4 at 177-196). Plaintiff stated that at the time of the burglary, she lived with her daughter, her grandson, and her husband. Plaintiff further stated that 2016 Ellerslie was her home and residence, and that all of her personal property was at 2016 Ellerslie, despite her admission that she had been spending nights at her mother's house because of an alleged injury.

On February 19, 2018, in connection with his investigation of Plaintiff's November and December Claims, Wilcox interviewed Plaintiff by telephone. (Wilcox Dec. ¶ 45; R. Doc. 35-8 at 179-180). During the interview, Plaintiff stated she moved in with her mother after the November 17 burglary, but she refused to provide her mother's address.

On April 3, 2018, State Farm sent Plaintiff a reservation of rights letter outlining the then developing coverage questions. (Wilcox Dec. ¶ 37; *see* R. Doc. 35-8 at 67-68). On April 24, 2018, State Farm made its first request that Plaintiff submit to an EUO, again reserved its rights, reminded Plaintiff of her duties, and requested Plaintiff to submit her sworn proof of loss and documents to support her Contents List. (Wilcox Dec. ¶ 37; *see* R. Doc. 35-8 at 69-72).

Thereafter, over the next four months, State Farm (through counsel) wrote to Plaintiff (through counsel) eleven separate times requesting that she submit to an EUO on May 31, June 1, June 5, June 6, June 15, July 10, July 11, July 17, July 25, August 29, and August 30, 2018. (Wilcox Dec. ¶ 38; *see* R. Doc. 35-8 at 73-83). On August 10, 2018, State Farm (through counsel) explained Plaintiff's duties under the Policy and explained that her failure to cooperate would materially prejudice State Farm's investigation. (Wilcox Dec. ¶ 38; *see* R. Doc. 35-8 at 84-85). Ultimately, Plaintiff agreed to appear for an EUO on September 27, 2018. (Wilcox Dec. ¶ 39).

On September 27, 2018, State Farm (through counsel) appeared at Plaintiff's counsel's office for the EUO, but Plaintiff's counsel advised that he had just received receipts from

6

Plaintiff and refused to produce them. (R. Doc. 35-8 at 86-100). Plaintiff agreed to use her best efforts to produce additional documents to her attorney by October 27, 2018, and the parties rescheduled the EUO to take place on November 9, 2018. (R. Doc. 35-8 at 94-97).

On October 23, 2018, State Farm emailed Plaintiff's counsel and provided a copy of the *proces verbal* from the first attempted EUO to remind Plaintiff of her duties and her agreements, again asking that she prepare and submit her sworn proof of loss. (Wilcox Dec. ¶ 40, R. Doc. 35-8 at 101). On October 30, 2018, in lieu of producing actual receipts, Plaintiff produced what she alleged was a spreadsheet that summarized the receipts she and her attorney possessed but had not produced. (Wilcox Dec. ¶ 40).

In an effort to avoid postponing the EUO scheduled on November 9, 2018, State Farm (through counsel) reminded Plaintiff (through counsel) of her promise (on the record) to provide the receipts at least a week in advance. (Wilcox Dec. ¶ 41). State Farm asked for the receipts on November 2, 2018, and again on November 5, 2018. (Wilcox Dec. ¶ 41; R. Doc. 35-8 at 105-106). Still, Plaintiff failed to provide the receipts to State Farm or its attorney. (Wilcox Dec. ¶ 41). As a result, State Farm could not proceed with the EUO, which had been set for November 9, 2018 at 10:00 am. Plaintiff (through counsel) provided some receipts (the "Receipt Bundle") by email on November 9, 2018 at 10:24 am. (Wilcox Dec. ¶¶ 41-42; R. Doc. 35-7; R. Doc. 35-8 at 1-20, 107-110). Plaintiff represented that additional receipts existed but these were never produced. (Wilcox Dec. ¶ 41).

Plaintiff filed this action in State Court on or about November 16, 2018. (R. Doc. 1-4).

On November 28, 2018, State Farm, through counsel, asked Plaintiff to confirm that she had submitted all receipts she intended to submit in support of her claim. (Wilcox Dec. ¶ 42; R. Doc. 35-8 at 112). On December 5, 2018 and December 12, 2018, State Farm reiterated that request and again requested Plaintiff's EUO. (Wilcox Dec. ¶ 42; R. Doc. 35-8 at 112). The

7

parties scheduled the EUO to take place on February 13, 2019, but State Farm cancelled the EUO when Plaintiff informed them that she would only stay for 90 minutes. (R. Doc. 35-8 at 114-116).

On March 5, 2019, State Farm once again proceeded to take the EUO. (R. Doc. 35-4 at 24-71). Plaintiff refused to provide basic information such as her cell phone number and contact information for material witnesses. (R. Doc. 35-4 at 44-52). Plaintiff also stated that State Farm's counsel had a "vexed spirit" and that, therefore, she did not want to continue for the day: "If you can't change that spirit, we're not going to talk anymore until you're able to come back with a humble spirit because God orders my steps." (R. Doc. 35-4 at 53, 69). When Plaintiff issued a series of profane personal attacks, State Farm's counsel agreed to reschedule the EUO to occur at a later date with a videographer. (R. Doc. 35-4 at 70-71). State Farm represents that it did not have the opportunity to question Plaintiff about any substantive aspect of her claim. (R. Doc. 35-1 at 47).

Following State Farm's attempt to complete Plaintiff's EUO on March 6, 2019, State Farm, through counsel, made no fewer than twelve written requests that Plaintiff schedule a date to complete her EUO. (Wilcox Dec. ¶ 43; R. Doc. 35-8 at 117-143).

On January 21, 2020, Wilcox drove from New Orleans to Baton Rouge to inspect 2016 Ellerslie. (Wilcox Dec. ¶ 44). Plaintiff (through counsel) had informed State Farm that the house would be open and accessible for State Farm to inspect it, but Wilcox found the house boarded up, locked, and utterly inaccessible. (Wilcox Dec. ¶ 44).

State Farm represents that Plaintiff's counsel ultimately advised that Plaintiff would appear for the EUO on October 1, 2020, after the deadline to file dispositive motions in this deadline. (R. Doc. 35-1 at 47).

**C.     Analysis**

There is no disputed material fact with respect to whether Plaintiff breached her duty of cooperation with State Farm, which caused State Farm material prejudice.

Under Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.)*, 495 F.3d 191, 206 (5th Cir. 2007) (citing *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003)). The words of a contract must be given their generally prevailing meaning. La. C.C. art. 2047; *see also Cadwallader*, 848 So. 2d at 580. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. art. 2046. If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. *Vanderbrook*, 495 F.3d at 207.

"Cooperation clauses in insurance contracts 'fulfill the reasonable purpose of enabling the insurer to obtain relevant information concerning the loss while the information is fresh.'" *Hamilton v. State Farm Fire & Cas. Ins. Co.*, 477 Fed. App'x 162, 165 (5th Cir. 2012) (per curiam) (quoting *Holden v. Connex–Metalna Mgmt. Consulting*, No. 98-3326, 2000 WL 1741839, at *2 (E.D. La. Nov. 22, 2000)). "[F]ailure of an insured to cooperate with the insurer . . . [is] a material breach of the contract and a defense to a suit on the policy." *Honore v. AIG Prop. Cas. Ins. Agency, Inc.*, No. 13-00667, 2014 WL 4986780, at *3 (M.D. La. Sept. 15, 2014) (citing *Lee v. United Fire & Casualty Co.*, 607 So. 2d 685, 688 (La. App. 4th Cir. 1992); *Mosadegh v. State Farm Fire & Cas. Co.*, No. 07-4427, 2008 WL 4544361, *3 (E.D. La. Oct. 8, 2008), *aff'd*, 330 Fed. App'x 65 (5th Cir. 2009). "An outright refusal to submit to an examination is the easy case. Courts have also found a failure of cooperation, however, when the insured

refused to answer material questions during the examination." *Lee*, 607 So. 2d at 688. "The intransigent refusal of the plaintiff to comply with the cooperation clause . . . should independently suffice to justify a dismissal [of the insured's claims against the insurer]." *Id*. Failure to cooperate by submitting to an EUO and producing requested documents prior to filing suit subjects an action for insurance coverage to dismissal. *See Kerr v. State Farm Fire and Cas. Co.,* 934 F. Supp. 853 (M.D. La. 2012), *affd*, 511 F. App'x 306, 306-07 (5th Cir. 2013); *see also Honore*, 2014 WL 4986780, at *3 ("[T]here is no question that Honore was bound by the terms of the Policy to comply with Lexington's 'reasonabl[e]' requests for (1) an 'examination under oath,' and (2) additional 'records and documents.'") (citations omitted).

Having considered the undisputed material facts and arguments set forth by State Farm, the Court concludes that Plaintiff breached her duties under the cooperation clause prior to filing suit. Pursuant to the language of her policy, Plaintiff was required, before filing suit, to permit inspection of the property, to provide State with requested records and documents, submit to EOUs, and submit (within 60 days after the loss) a sworn proof of loss. Plaintiff did not comply with these conditions. Plaintiff has not submitted a sworn proof of loss and other documents despite repeated requests by State Farm. Plaintiff has not identified which items were allegedly stolen with respect to the November Claim and the December Claim. Plaintiff has refused to submit to an EUO, or otherwise prevented the competition of scheduled EUOs through her egregious lack of cooperation. Even after Plaintiff initiated the instant lawsuit, she has failed to meaningfully participate in an EUO. Plaintiff has raised no arguments in support of a finding that she did not breach her duty to cooperate under the Policy prior to filing suit.

The record also supports a finding that State Farm was materially prejudiced by Plaintiff's failure to cooperate as a matter of law. "Courts have found that an insurer is materially prejudiced when an insurer is 'deprived . . . of the right to properly and thoroughly investigate

10

the claim' resulting from a failure to cooperate on the part of the insured where the insurer has shown a diligent effort to obtain the information requested." *Winbourne v. Wilshire Ins. Co.*, No. 18-01177, 2019 WL 1748541, at *4 (W.D. La. Apr. 18, 2019) (quoting *Beasley v. GeoVera Specialty Ins. Co.*, No. 13-395, 2015 WL 2372328, *3 (E.D. La. May 15, 2015)). An insurer is materially prejudiced by the insured's filing of suit before submitting for an EUO, which deprives an insurer the opportunity to settle the claims and avoid the expense of litigation. *Kerr*, 934 F. Supp. 2d at 860-61; *see Hamilton*, 477 Fed. App'x at 166 ("The underlying purpose of a cooperation clause is to allow the insurer to obtain the material information it needs from the insured to adequately investigate a claim of loss prior to the commencement of litigation proceedings."); *Honore*, 2014 WL 4986780, at *3 ("Honore's breach *necessarily* prejudiced Lexington, because Lexington could not obtain information relevant to its investigation while it was still fresh, and could not inspect Honore's property in a timely fashion after receiving information from an examination under oath").

     Here, Plaintiff's failure to provide information requested by State Farm has materially, demonstrably prejudiced State Farm's investigation of the November Claim. In particular, State Farm has been materially prejudiced by losing the ability to obtain relevant information to adjust the claim prior to being subjected to the expense of litigation. Without the sought documentation, sworn statement under oath, or complete EOU, State Farm has had nothing but Plaintiff's recorded statement, which conflicts with other evidence in the record, and duplicative and unexplained receipts, some of which were subject to prior insurance claims are likely indicative of potential fraud. Plaintiff has raised no arguments in support of a finding that State Farm was not materially prejudiced by her failure to cooperate. There is no disputed material fact with respect to whether Plaintiff breached her duty to cooperate under the Policy and whether State

11

Farm was materially prejudiced by that breach. Accordingly, Plaintiff's coverage claim is subject to dismissal.

Finally, Plaintiff's statutory bad faith claim against State Farm also fails because she cannot show that State Farm "acted in an arbitrary and capricious manner" while investigating her claim. *See Dickerson v. Lexington Ins. Co.,* 556 F.3d 290, 297 (5th Cir. 2009). The evidence shows the opposite: State Farm promptly commenced an investigation into Plaintiff's claim, and afforded Plaintiff multiple opportunities to comply with its requests for an EUO and production of documents, only to be stymied by Plaintiff's decision to file suit rather than comply with the express terms of the Policy. *See Honore*, 2014 WL 4986780, at *3-4. Plaintiff's material breach of the policy precludes recovery of bad faith claim penalties and attorney fees. *Hamilton* 477 Fed App'x at 166.

### III.   CONCLUSION

For the reasons assigned,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (R. Doc. 35) is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on December 8, 2020.

‌                                                                     _____
‌                                                                     **RICHARD L. BOURGEOIS, JR.**
‌                                                                     **UNITED STATES MAGISTRATE JUDGE**